COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Senior Judge Bumgardner

PAULA HARRIS AND
  JAMES HARRIS

                                                        MEMORANDUM OPINION*
v.        Record No. 0262-16-4                              PER CURIAM
                                                        SEPTEMBER 27, 2016

CLARKE COUNTY DEPARTMENT
  OF SOCIAL SERVICES

                    FROM THE CIRCUIT COURT OF CLARKE COUNTY
                              Alexander R. Iden, Judge

              (Patrick Michael McGraw; McGraw Law, P.C., on brief), for
              appellants.

              (Beth M. Coyne; Courtney H. Warner, Guardian *ad litem* for the
              minor child; Winchester Law Group, P.C., on brief), for appellee.


        Paula and James Harris appeal the circuit court's permanency planning order and dismissal

of their petition for custody of their great-grandson, K.C. The Harrises argue that the circuit court

erred by (1) denying their motion to intervene; (2) finding that the Clarke County Department of

Social Services (the Department) adequately investigated relative placement for K.C.; and

(3) denying their petition for custody because it was in the child's best interests and the Harrises

have satisfied the requirements of Code § 16.1-283(A1). Upon reviewing the record and briefs of

the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the

decision of the circuit court. See Rule 5A:27.

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

Jessica Carter is the mother of K.C. and his half-brother, R.G. In February 2014, Carter was living with her children and her grandparents, the Harrises. The Department had been involved with the family for several years.

On February 7, 2014, the Department removed K.C. and R.G. from Carter's care because she took them with her to purchase heroin. The Department initially placed the children in the Harrises' care, but Paula Harris informed the Department that she could only keep them until a better placement was found.[1] Paula Harris had problems with her hip, which affected her mobility.

At the time of the removal, K.C. was seven years old. He was diagnosed with cerebral palsy. K.C. was non-verbal and was not toilet trained. He had an unsteady gait and had difficulty using stairs. K.C. was prone to putting "everything," such as crayons, markers, and pens, in his mouth. K.C. also had significant dental issues that had to be resolved when he came into the Department's care. K.C. receives special education services.

On March 14, 2014, the Clarke County Juvenile and Domestic Relations District Court (the JDR court) entered an adjudicatory order that found K.C. had been neglected.

_____

[1] Thereafter, the children were placed with R.G.'s paternal grandparents, and subsequently, foster care placements. After R.G.'s paternal grandparents completed their foster care training, R.G. moved back to their home, where he has remained throughout this process. R.G. is not subject to this appeal.

- 2 -

Carter continued to live with the Harrises throughout 2014, and the Harrises stated that she had not lived with them since March 31, 2015. However, Carter was still removing her belongings from the Harrises' home in December 2015.

Carter has a long-standing substance abuse problem. Carter's substance abuse counselor testified that her living arrangement with the Harrises enabled Carter to continue to use drugs and refuse to take responsibility for her actions.

The Department provided numerous services to Carter. However, she was not compliant with, or did not complete, the various services, including substance abuse counseling, parent mentoring, and job skill services. While the children were in foster care, Carter was convicted of felony uttering and arrested for assault and drunk in public.

In November 2014, Paula Harris had surgery on her hip. She testified that prior to the surgery and since that time, she takes Percocet pills for pain every day. Carter alleged that Paula Harris sold her pain pills, and a witness testified to buying Percocet pills from Paula Harris on two separate occasions in 2012. A social worker testified that Paula Harris still had limited mobility in April 2015 because of nerve damage. Paula Harris testified that at the time of the circuit court hearing, she was much more mobile than when the child was removed from Carter's custody. However, she admitted that her bed remained downstairs, where it had been since she returned from rehabilitation in December 2014.

On April 14, 2015, the JDR court ordered the Department to file petitions to terminate Carter's parental rights. The Department filed such petitions in May 2015.

On August 10, 2015, the Harrises filed a petition for custody of K.C. and a petition for visitation with R.G. in the JDR court. However, they had not completed the requirements to be considered for foster care placement.[2]

On August 18, 2015, the JDR court terminated Carter's parental rights to R.G. and dismissed the Harrises' petition for visitation. On the same date, the JDR court terminated Carter's parental rights to K.C. and dismissed the Harrises' petition for custody. The Harrises appealed the JDR court's orders.

On December 7 and 21, 2015, the parties appeared before the circuit court. The Harrises made a motion to intervene in the case involving Carter's termination of parental rights of K.C. The Harrises argued that pursuant to Code § 16.1-283(A1), the Department was required to investigate possible relative placements for K.C. The Harrises wished to present evidence pursuant to Code § 16.1-283(A1). The Department objected to the motion to intervene. The circuit court denied the motion to intervene because of the statutory scheme in termination of parental rights cases.

Prior to the presentation of evidence, Carter stated that she would agree to an involuntary termination of parental rights to R.G. The circuit court entered orders terminating her parental rights to R.G. and approving the permanency planning goal. The Harrises withdrew their petition for visitation with R.G.

With respect to K.C., Carter stipulated that the evidence was sufficient to terminate her parental rights to K.C., but she wanted custody of K.C. to be granted to the Harrises. She did not agree to the Department having custody and placing the child for adoption. Therefore, the

---

[2] The Harrises had not completed all of the requirements as of the December 2015 hearings.

parties narrowed the issue before the court to the placement of K.C. After hearing the evidence and argument, the circuit court took the matter under advisement.

On December 30, 2015, the circuit court issued its "Findings of Fact and Conclusions of Law." The circuit court made the following findings pursuant to Code § 16.1-283(A1):

> i) While Mr. and Mrs. Harris are now willing to receive and care for [K.C.], they are not qualified;
>
> ii) Mr. and Mrs. Harris are willing to have a positive, continuous relationship with [K.C.];
>
> iii) Since Mr. and Mrs. Harris' goal is reunification of [K.C.] with Jessica Carter, Mr. and Mrs. Harris are not committed to providing a permanent, suitable home for [K.C.]; and
>
> iv) Mr. and Mrs. Harris are not willing and do not have the ability to protect [K.C.] from abuse and neglect.

Furthermore, the circuit court held that the Department adequately investigated placement of the child with his relatives, but that it was not in K.C.'s best interests to be placed with the Harrises. Therefore, the circuit court denied and dismissed the Harrises' petition for custody. It approved the termination of Carter's parental rights to K.C. and ordered that the Department would continue to have custody of K.C. It also stated that the Department had the authority to place K.C. for adoption. The circuit court directed the parties to file written objections within ten days. On January 11, 2016, the Harrises filed their objections to the court's findings of fact and conclusions of law. On January 13, 2016, the circuit court entered orders reflecting its rulings, with the Harrises' objections attached thereto. This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted).

*Assignment of error #1*

The Harrises argue that the circuit court erred by denying their motion to intervene in Carter's termination of parental rights case. They contend that their rights to custody of K.C. were through Carter and should have been determined prior to the termination of her parental rights. However, the circuit court heard that Carter agreed to the termination of parental rights prior to hearing the evidence in favor of the Harrises' petition for custody. The Harrises assert that the denial of their motion to intervene affected their rights to have their case heard as parties of interest.

Rule 3:14 states, "A new party may by leave of court file a pleading to intervene as a plaintiff or defendant to assert any claim or defense germane to the subject matter of the proceeding."

Assuming without deciding that the circuit court erred in denying their motion to intervene, the error was harmless. The standard for non-constitutional error is established in Code § 8.01-678, which provides, in pertinent part:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any other error committed on the trial.

At the beginning of the case, the parties narrowed the issue to the placement of K.C. All of the parties had an opportunity to present evidence and argument on that issue. The hearing spanned two days. Contrary to the Harrises' argument, the termination of Carter's parental rights did not affect their ability to present evidence regarding custody of K.C. Although Carter stated at the beginning of the hearing that she agreed to the termination of her parental rights, the circuit court did not enter the order until after it heard all of the evidence. The Harrises and the Department presented evidence and argued the factors contained in Code § 16.1-283(A1). The

circuit court ultimately decided that it would not be in K.C.'s best interest to place him with the Harrises based on the Code § 16.1-283(A1) factors.

Consequently, regardless of whether the Harrises intervened in the termination of Carter's parental rights case, the circuit court determined whether the Harrises were an appropriate placement according to Code § 16.1-283(A1), which is what they requested when they explained to the circuit court why they wanted to intervene in Carter's termination case.

*Assignment of error #2*

The Harrises argue that the circuit court erred by finding that the Department adequately investigated the placement of K.C. with his relatives.

Before terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). The "Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465.

The evidence proved that the Department was familiar with the Harrises and had been involved with their family for years prior to K.C.'s removal. Furthermore, the Department remained in contact with the Harrises while K.C. was in foster care. The Department informed the Harrises that they needed to complete foster care training before K.C. could be placed with them, but as of the date of the circuit court hearing, they still had not completed all of the requirements. In April 2015, Paula Harris told the social worker that she was still having health problems. It was at this time that the JDR court ordered the Department to file the petitions to terminate Carter's parental rights.

The Department presented evidence that, in addition to contacting the Harrises, the social worker investigated Carter's mother, maternal grandmother, and several of Carter's aunts and uncles as possible placements for K.C. The social worker had to leave messages for several of the people, and not all returned her calls. For those relatives to whom the social worker spoke, they were not available as a possible placement.

Based on the record, the circuit court did not err in holding that the Department "adequately investigated placement of the child with his relatives." The Department attempted to contact numerous relatives, but to no avail. As detailed below, the evidence supports the circuit court's finding that the Harrises were not a viable placement because they were not willing or able to protect K.C. from abuse and neglect.

*Assignment of error #3*

The Harrises argue that the circuit court erred in denying their petition for custody of K.C. and in finding that they did not satisfy the requirements of Code § 16.1-283(A1).

Code § 16.1-283(A1) states:

> Any order transferring custody of the child to a relative or other interested individual pursuant to subsection A shall be entered only upon a finding, based upon a preponderance of the evidence, that the relative or other interested individual is one who, after an investigation as directed by the court, (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect; and the order shall so state.

The circuit court agreed with the Harrises that they were willing to receive and care for K.C. and have a positive, continuous relationship with him. However, it found that they were not qualified to receive and care for him. The circuit court heard evidence of Paula Harris's physical health condition. After her hip surgery, she suffered from nerve damage. She continued to sleep in a bed downstairs and took Percocet on a daily basis for pain. The circuit

- 8 -

court also heard evidence that Paula Harris sold her pain pills for money in 2012. In addition, the circuit court found that James Harris "has had a problem with alcohol."

The circuit court also concluded that the Harrises were "not committed to providing a permanent, suitable home" for K.C. because their "goal is reunification of [K.C.] with Jessica Carter." The Harrises believed that Carter could have contact with K.C. in the future, even after her parental rights were terminated. Paula Harris indicated that she believed that Carter could eventually have custody, or at least contact, with K.C.

Finally, the circuit court held that the Harrises were not willing and did not have the ability to protect K.C. from abuse and neglect. K.C. had been living with the Harrises when the Department removed him from Carter's custody. The Harrises had a history of enabling Carter and allowing her to do what she wanted. Paula Harris requested assistance from the Department in the past when Carter would bring strangers to the home, and Paula Harris could not stop her from doing so. Paula Harris stated that she had difficulty keeping Carter out of the house. James Harris said that he was not aware that Carter had a drug problem. While K.C. was living with the Harrises, he missed several medical appointments, and his dental hygiene was poor. Neither one of the Harrises recognized and understood all of K.C.'s limitations and special needs.

"Where the record contains credible evidence in support of the findings made by that court, we may not retry the facts or substitute our view of the facts for those of the trial court." Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 336, 417 S.E.2d 1, 2 (1992).

Considering the totality of the evidence, the circuit court did not err in finding that the Harrises were not a suitable placement for K.C. It did not err in denying their petition for custody.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>